Anna Lee BROWN, Plaintiff-Appellee,

v.

BOARD OF BAR EXAMINERS OF the STATE OF NEVADA and Board of Governors of the State Bar of Nevada et al., Defendants-Appellants.

CA 79–4529.

United States Court of Appeals, Ninth Circuit.

July 18, 1980.

---

Eleissa C. Lavelle, Las Vegas, Nev., argued, for defendants-appellants.

Robert J. Angres, Incline Village, Nev., argued, Robert J. Angres, Incline Village, Nev., on brief, for plaintiff-appellee.

Before WRIGHT and POOLE, Circuit Judges, and CRAIG,* District Judge.

POOLE, Circuit Judge.

The Board of Bar Examiners of the State of Nevada and the Board of Governors of the State Bar of Nevada appeal from the issuance of a preliminary injunction compelling them to administer the 1979 bar examination to appellee Anna Lee Brown. In February 1979, Brown applied for admission

---

* Honorable Walter E. Craig, Senior United States District Judge for the District of Arizona, sitting by designation.

to the State Bar of Nevada,[1] but her application was rejected because, as a graduate of a correspondence law school not accredited by the American Bar Association, she failed to comply with Nevada Supreme Court Rule 51(3).[2] In May, Brown submitted a petition and supporting documents to the Nevada Supreme Court requesting a waiver of its Rule 51(3); her petition was denied without elaboration on June 7, 1979.

Brown thereupon filed suit against the two appellants herein and the Nevada Supreme Court in United States District Court, alleging that they had applied Rule 51(3) arbitrarily, capriciously and unequally. By way of relief the complainant prayed that she be allowed to sit for the 1979 Nevada bar examination; that her application be processed in like manner as all other applications; and that she be awarded monetary damages and attorney fees. Jurisdiction was predicated upon 28 U.S.C. § 1343, and 42 U.S.C. §§ 1981 and 1983. By separate motion filed June 27, 1979, plaintiff sought a preliminary injunction prohibiting defendants from refusing to allow her to take the scheduled July 25th examination. All three defendants moved to dismiss for lack of subject matter jurisdiction; appellants additionally moved for dismissal on the ground that they were not proper parties to the action.

On July 17, 1979, the district court issued findings of fact and conclusions of law and a written memorandum of decision, and also ordered entry of a preliminary injunction.[3] The court concluded that federal jurisdiction existed to entertain plaintiff's challenge to the Nevada Supreme Court's administration of its rule. It further found a violation of due process due to the fact that the Supreme Court had granted certain petitions for waiver and had denied others without "'ndicat[ing] a rational basis upon which it exercises its discretion in this regard . . . ."[4] Citing this Court's opinion in *Hackin v. Lockwood*, 361 F.2d 499 (9th Cir.), *cert. denied*, 385 U.S. 960, 87 S.Ct. 396, 17 L.Ed.2d 305 (1966), the court dismissed the Board of Governors and the Board of Bar Examiners as improper parties because they performed only ministerial duties in administering Rule 51(3). The preliminary injunction enjoined "defendants," collectively, from preventing Brown from sitting for the bar examination which was to commence on July 25.

On July 24, appellants sought from this Court a writ of prohibition, which was denied on July 26 on the basis that appellants enjoyed an adequate remedy at law. Appellants then filed the instant appeal. Brown took the examination and received a passing score.[5]

We conclude that the preliminary injunction was improperly granted because the district court was without jurisdiction to review a decision of the Nevada Supreme Court concerning an individual application for admission to the bar. Accordingly, we reverse.

---

**1.** Only the Nevada Supreme Court may license attorneys to practice law in Nevada (Nevada Supreme Court Rule 39), but it has designated the State Bar to accept applications and make recommendations as to admission. NSCR 49 and 50.

**2.** Rule 51(3) provides: "An applicant for examination for a license to practice as an attorney and counselor at law in this state shall have received a degree of bachelor of laws, or an equivalent law degree, from a law school approved by the committee on legal education and admissions to the bar of the American Bar Association, and shall present evidence of the same. * * *"

**3.** Fed.R.Civ.P. 65(d), which provides that an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." The district court's decision is reported as *Brown v. Supreme Court of Nevada*, 476 F.Supp. 86 (D.Nev. 1979).

**4.** 476 F.Supp. at 89. The court found no support for Brown's contention that the Nevada Supreme Court had discriminated on the basis of sex in violation of the Equal Protection Clause.

**5.** The Nevada Supreme Court deferred ruling on Brown's admission to the bar pending the outcome of this appeal. Brown, however, has petitioned that court for admission forthwith, contending that her successful completion of the examination has eliminated the only constitutionally permissible barrier to her admission.

PROPER PARTY ON APPEAL

 As an initial matter, we must determine whether the State Bar and the Board of Bar Examiners have standing to pursue this appeal. Brown urges that once dismissed from the action as improper parties under *Hackin v. Lockwood, supra,*[6] appellants were deprived of their standing to seek review of the injunction in this Court.

Although purporting to eliminate appellants from the suit, the district court nevertheless granted injunctive relief against them. The court ordered the "defendants" to allow Brown to sit for the bar examination, an order with which under Nevada practice only the appellants could physically comply.[7] The injunction was not explicitly directed toward the Nevada Supreme Court nor did it command any action by that body.

Ordinarily, as parties specifically bound under the terms of a preliminary injunction, appellants could avail themselves of interlocutory appellate review pursuant to 28 U.S.C. § 1292(a)(1). We see no logic in the district court's novel rulings which concurrently dismissed appellants and yet granted specific relief against them. Whatever the rationale, however, appellants should not be denied appellate review of orders by which they were aggrieved. To hold otherwise would be to compel them to risk contempt. Whether appellants could challenge the district court's jurisdiction on appeal of a contempt citation is doubtful. See *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). In any event, the jurisdictional issue should be settled directly by the orderly process of review, not tangentially by disobedience.

*Carroll v. President and Commissioners of Princess Anne, et al.,* 393 U.S. 175, 179, 89 S.Ct. 347, 350, 21 L.Ed.2d 325 (1968); *Bethlehem Mines Corp. v. United Mine Workers,* 476 F.2d 860, 863 (3rd Cir. 1973).

We conclude that appellants are appropriate parties to appeal an injunction by which they are specifically bound.

MOOTNESS

 Brown argues that, since the bar examination has already been conducted and the object of the injunction thus has been effected, this appeal is moot. Her successful performance on the examination is indeed an accomplished fact which cannot be undone, but the appeal can be entertained nonetheless.

A potential applicant for admission to the bar would not become aware of the Nevada Supreme Court's denial of a waiver petition and consequently could not seek relief in court earlier than a few weeks before the examination. As a result, appellate review of any court order purporting to require that an applicant be permitted to take the examination could in most instances not practically be obtained until after the examination had been administered. The effect would thus be orders "capable of repetition, yet evading review."[8] *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). In similar situations, the Supreme Court has held that such cases are not moot, despite the fact that the need for specific relief may have been obviated. E. g., *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *United States v. W. T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

More importantly, the underlying dispute over the district court's jurisdiction still sur-

---

**6.** In *Hackin,* we held that when a court's inquiry is limited to the validity of a rule governing admission to the bar, the proper party is the state supreme court, the entity responsible for promulgation and capable of modifying the rule. In the instant case, however, the district court did not restrict its attention to general rules, but instead directed its injunction to the bar examination, a matter within the province of the State Bar. In this factual setting, appel-

lants cannot be termed improper parties and *Hackin* is thus inapplicable.

**7.** "The court hereby confers upon the board of bar examiners the power to examine applicants pursuant to Rule 49." NSCR 50(1). See also n. 1, *supra.*

**8.** We were informed at argument that several suits, raising issues similar to those in this case but pertaining to the 1980 bar examination, are currently pending in the district court.

vives. We do not here have a situation in which one party has voluntarily abandoned its previous stance. Cf. *Church of Scientology of Hawaii v. U. S.*, 485 F.2d 313 (9th Cir. 1973). To the contrary, appellants administered the examination to Brown pursuant to the district court's order, while protesting explicitly that the court lacked power to issue the injunction. They have consistently maintained their position that Brown had no recourse to federal district court, and the controversy is moot only in the limited sense that Brown has obtained the particular equitable relief which she sought as a necessary first step toward a larger goal.

This case presents a factual context analogous to *Carroll v. Princess Anne, supra*, in which petitioners were restrained by a state court from conducting a rally for ten days. By the time appellate review could be had, of course, the order had by its own terms expired. The Supreme Court nevertheless decided that the case was not moot, since the dispute which gave rise to the order was still unresolved: "whether, by what processes, and to what extent the authorities of the local governments may restrict petitioners in their rallies and public meetings." *Id.*, 393 U.S. at 179, 89 S.Ct. at 350. This conclusion, that the issue was not moot, was seen by the Court as particularly appropriate in the context of an injunction, where proper procedure is to seek judicial review rather than risk contempt. See *Walker v. City of Birmingham, supra*. The instant case is likewise amenable to adjudication by this Court because it involves an ongoing issue of federal court jurisdiction and of federal-state relationships, the consideration of which should not be defeated by a short-term order which state officials are constrained to obey rather than be held in contempt. As in *Carroll v. Princess Anne*, the crucial question persists: "whether, by what processes and to what extent" a federal court may intervene in the procedure by which states admit attorneys to the practice of law.

SUBJECT MATTER JURISDICTION

■ Admission of applicants to the bar of a state is a matter of local concern, governed in Nevada by rules and regulations promulgated by the judicial branch. The only constraints on the states' exclusive jurisdiction are constitutional in nature: a person may not be excluded from the practice of law in a manner or for reasons which contravene the Fourteenth Amendment, nor can the state court impose qualifications which lack "a rational connection with the applicant's fitness or capacity to practice law." *Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957).

Since federal courts are granted jurisdiction under 28 U.S.C. § 1343 to vindicate constitutional rights, an issue arises as to the extent of a federal court's authority to participate in what is primarily a state concern. A dichotomy has developed between two kinds of constitutional attack which might be pursued by an unsuccessful bar applicant: "The first is a constitutional challenge to the state's general rules and regulations governing admission; the second is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission." *Doe v. Pringle*, 550 F.2d 596, 597 (10th Cir. 1976), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977).

■ In the first type of attack, federal district courts may assert jurisdiction under § 1343 to ensure that generally applicable rules or procedures do not impinge on constitutionally protected rights. Federal courts have frequently entertained challenges to rules controlling admission to the bar, and have almost without exception sustained the validity of such rules. E. g., *Hackin v. Lockwood, supra*, (Arizona rule requiring that applicants be graduates of accredited law schools); *O'Neal v. Thompson*, 559 F.2d 485 (9th Cir. 1977) (Nevada rule requiring examination for nonresident attorneys); *Whitfield v. Illinois Board of Law Examiners*, 504 F.2d 474 (7th Cir. 1974) (use of examination in Illinois which necessitated inherently subjective evaluations).

■ On the other hand, a state court's decision on an individual application may not be disturbed in an original suit in federal district court. "[O]rders of a state court relating to the admission, discipline, and disbarment of members of its bar may be

reviewed only by the Supreme Court of the United States on certiorari to the state court . . . ." *MacKay v. Nesbett,* 412 F.2d 846 (9th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969). In exercising its judgment on an individual petition, a state supreme court performs a judicial act, *In re Summers,* 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945), reviewable in the Supreme Court. See *Schware v. Board of Bar Examiners, supra,* 353 U.S. at 238, 77 S.Ct. at 755; *Konigsberg v. State Bar of California,* 353 U.S. 252, 258, 77 S.Ct. 722, 725, 1 L.Ed.2d 810 (1957). A federal district court, in contrast, does not sit as an appellate court and therefore lacks jurisdiction to review state court actions denying admission to the bar, even though the denial allegedly involves deprivation of constitutional rights. *Doe v. Pringle, supra,* 550 F.2d at 599; *Woodard v. Virginia Board of Bar Examiners,* 454 F.Supp. 4, 6 (E.D.Va. 1978), *affirmed,* 598 F.2d 1345 (4th Cir. 1979); *Feldman v. State Board of Law Examiners,* 438 F.2d 699, 704 (8th Cir. 1971).

The district court in the present case construed Brown's suit to represent the first type of challenge: an attack on the Nevada Supreme Court's general administration of Rule 51(3) as being arbitrary and capricious and hence a violation of due process.[9] Such an attack on the overall administration of rules would be cognizable in district court. If the claim were valid and the dispensation of waivers were in fact arbitrary and capricious, the appropriate remedy would be to eliminate the constitutional violation by changing the relevant administrative proce-

dures. Thus, having concluded that the Nevada Supreme Court had failed to evince a rational basis for its grant or denial of waivers, the district court might properly have directed the state court to articulate reasons for its waiver decisions in order to ensure that such decisions were rationally connected to fitness to practice law. See *Schware v. Board of Bar Examiners, supra,* 353 U.S. at 239, 77 S.Ct. at 756; *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963).

Such a broad-based remedy, however, was not the objective of Brown's suit. Although her complaint mentioned that the rule had been arbitrarily applied to herself "and others," the prayer for relief sought only individual redress: an order allowing her to sit for the bar examination and requiring appellants to process her application, plus an award of monetary damages. No general declaratory relief was requested; no general declaratory relief was given.

 Thus, despite superficial indicia of a general constitutional attack, Brown's cause of action was inextricably intertwined with her endeavor to acquire a waiver from the operation of Rule 51(3). The essence of her case was the effect of the rule on her particular individual, application. The district court's jurisdiction depends on the nature of the allegations and the remedy requested.[10] An individual claim may naturally be utilized to confer sufficient standing to challenge general rules and regulations, but appellate review of a decision on an individual application is not available from a federal district court. *Woodard v.*

---

**9.** Brown did not attack the validity of Rule 51(3) itself, nor could she successfully have done so. Nearly identical qualifications for admission to the bar in the states of Arizona and Alaska have previously been upheld against constitutional attack by this Court. *Hackin v. Lockwood, supra*; *Santos v. Alaska Bar Association,* 618 F.2d 575 (9th Cir. 1980).

**10.** The district court premised its jurisdiction on an admittedly "fuzzy" distinction between characterizations of the function performed by the Nevada Supreme Court in denying Brown's petition: jurisdiction was appropriate to review an "administrative" action, but not an "adjudicatory" or judicial act. The court concluded that the denial of a waiver was merely administrative since the state court provided no hearing, fact-finding or written decision. The

soundness of the district court's interpretation that absence of judicial trappings negates the existence of a judicial act is questionable. *In re Summers, supra.* The critical point, however, is that demarcation between administration and adjudication, even when such a distinction can be formulated, is not the touchstone for determining jurisdiction. To the extent that *Ktsanes v. Underwood,* 552 F.2d 740, on rehearing, 560 F.2d 790 (7th Cir. 1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978), contradicts this position, we respectfully disagree. We find the better view to be stated in other opinions. *Woodard v. Virginia Board of Bar Examiners, supra; Doe v. Pringle, supra.* See *Santos v. Alaska Bar Association, supra,* at 577.

*Virginia Board of Bar Examiners, supra,* 598 F.2d 1345; *Doe v. Pringle, supra.* Relief for Brown's individual grievance, if any, would be by petition to the United States Supreme Court. *Feldman v. State Board of Law Examiners, supra,* 438 F.2d at 704; *MacKay v. Nesbett, supra,* 412 F.2d at 846. The specific relief which Brown obtained, in effect a substitution of the district court's judgment for that of the Nevada Supreme Court as to *her* fitness, was beyond the court's jurisdiction to provide.

Because Brown's complaint presented a claim of individual constitutional deprivation and sought relief restricted to her particular application, it should have been dismissed for lack of subject matter jurisdiction. We vacate the preliminary injunction and remand with instructions to dismiss the complaint.

REVERSED.

The mandate in this case shall issue immediately.