Anton J. MILLER, Plaintiff-Appellant,

v.

The WASHINGTON STATE BAR ASSOCIATION, Defendant-Appellee.

No. 80–3002.

United States Court of Appeals,
Ninth Circuit.

Argued Aug. 5, 1981.

Submitted Aug. 19, 1981.

Decided June 22, 1982.

Rehearing and Rehearing En Banc
Denied Oct. 19, 1982.

Anton J. Miller, pro se.

Robert T. Farrell, Seattle, Wash., for defendant-appellee.

Before SCHROEDER and ALARCON, Circuit Judges, and PRICE,* District Judge.

SCHROEDER, Circuit Judge:

The appellant, Anton J. Miller, is a member of the Washington State Bar Association. He received a "letter of admonition" from the Disciplinary Board of the State Bar after he published a poem critical of the Washington Supreme Court. Miller filed this action under 42 U.S.C. § 1983 claiming that the admonition interfered with the exercise of his first amendment rights, and now appeals the district court's dismissal of the case for lack of jurisdiction.

The district court dismissed the suit in reliance upon the law of this circuit that the lower federal courts will not review actions of state courts with respect to attorney discipline. Federal jurisdiction to review such decisions lies exclusively in the United States Supreme Court by writ of certiorari to the state court. *MacKay v. Nesbitt*, 412 F.2d 846 (9th Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969); *see also Brown v. Board of Bar Examiners*, 623 F.2d 605, 609–10 (9th Cir. 1980). We hold that the district court erred in its reliance upon such authority in this case, as there have been no state court proceedings. We also reject the State Bar's alternative argument that the letter of admonition is not "disciplinary action" and hence does not create a justiciable case or controversy.

This dispute between Miller and the State Bar had its genesis in a poem criticizing the Washington Supreme Court's handling of a particular matter in which Miller was involved. A complaint was filed with the State Bar contending that Miller should be disciplined for allowing the poem he had written to be published in two local newspapers. The State Bar advised Miller by letter of the complaint, and offered him an opportunity to respond to the charges. When Miller did not respond within the period allowed, the State Bar's Disciplinary Board issued the letter of admonition challenged here, which provided as follows:

November 21, 1977

Mr. Anton J. Miller
Attorney at Law
P. O. Box 563
Raymond, Washington 98577

Re: LETTER OF ADMONITION

Dear Mr. Miller:

This will advise that the Disciplinary Board of the Washington State Bar Association has met and acted upon a complaint filed against you by August F. Hahn, as secretary to the local bar group. After due consideration, and in exercise of the discretion vested in the Board by Disciplinary Rule 2.4(f)(3), the Board voted to dismiss the complaint against you without referring it for a formal hearing. However, the facts surrounding the complaint are such that the Board has a concern about your professional conduct in this instance and therefore finds it necessary to issue this letter of admonition.

The complaint filed against you concerns your letters to the editors of the Harbor Pilot and Raymond Herald, in the form of poems criticizing decisions of the Court of Appeals and Supreme Court of this state in a matter in which you were personally involved. An attorney in this state may, of course, disagree with a court decision, and has the right to make his disagreement known in an appropriate manner. The Board, however, felt that your choice of language went beyond the bounds of appropriate criticism and cast undue disrespect on the courts of this state. Especially is this true of the last line of your poem, in which you state, "The rule of law is no longer secure, because its highest guardians are not pure." In the minds of the average reader such language might imply not only

---

* Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

your disagreement with the decisions of the courts, but also that you believe the courts acted corruptly.

While a letter of admonition does not constitute a formal finding of misconduct, it is to be understood that the Board raises this question in regard to the propriety of your actions.

> Very truly yours,
> Paul W. Steere, Chairman
> Disciplinary Board

Such letters are authorized by Rule 2.4(f)(3) of the Washington Rules for Discipline of Attorneys, which provides:

> *Letter of Admonition.* Where it appears to the Board that, even if the findings of the Local Administrative Committee or bar staff were true, the misconduct charged is not of sufficient magnitude to warrant a trial, the Board, in its discretion, may dismiss the complaint and send the attorney a letter of admonition warning against such conduct in the future. Such a letter shall not constitute a finding of misconduct.

Two days after the Board's letter was written, Miller wrote to the Secretary of the Board inquiring about the availability of remedies to review and expunge the letter of admonition. The chairman responded in writing that there was no administrative procedure available for appealing an admonition "because under the rules an admonition does not amount to a finding of misconduct." [1] Following receipt of the chairman's letter, Miller filed this action in district court seeking to have the letter expunged from his file.

Two questions are presented for our decision. The first is whether the district court correctly held that it did not have jurisdiction over a constitutional claim growing out of disciplinary action taken by the State Bar Association. The second, which the district court did not reach, is whether Miller is sufficiently "adversely affected" by the letter of admonition to give rise to a justiciable case or controversy.

 In urging that the State Bar and its disciplinary committees are immune from scrutiny in federal courts regarding alleged violations of attorneys' constitutional rights, the State Bar relies upon the decision of this court in *MacKay v. Nesbitt, supra.* That case, however, involved an attorney's attempt to review in federal district court orders of the Alaska Supreme Court suspending him from practice. This court's denial of jurisdiction did not create a blanket immunity for state bar associations from federal judicial review in disciplinary matters. Rather, the court, relying on *Theard v. United States,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957), merely held that orders of a state supreme court relating to discipline and disbarment of members of its bar could be reviewed only by the United States Supreme Court on certiorari to the state court, and not by means of an original action in a lower federal court. *MacKay* is leading authority for that proposition and has been followed by other courts in rejecting suits challenging state supreme court disciplinary actions. *See, e.g., Younger v. Colorado State Board of Bar Examiners,* 625 F.2d 372, 375 (10th Cir. 1980); *Martinez Rivera v. Trias Monge,* 587 F.2d 539, 540–41 (1st Cir. 1978); *Grossgold v. Supreme Court,* 557 F.2d 122, 124 (7th Cir. 1977); *Doe v. Pringle,* 550 F.2d 596 (10th Cir. 1976), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977).

The *MacKay* rule does not operate to bar this suit, as there has been no order of the Washington Supreme Court or of any other state court. The only action taken has been that of the disciplinary committee, and Miller was expressly told that review was unavailable. The dual predicates for application of the *MacKay* rule are a prior state court order, and the availability of a peti-

---

1. In view of the position taken in response to Miller's inquiry, the State Bar cannot now successfully contend that Miller should have filed an original action in the state supreme court for discretionary review of the letter of admonition.

tion to the United States Supreme Court. Both are lacking here.[2]

The State Bar contends that we should accord the same deference to the disciplinary committee as we do to judicial action, on the theory that the committee is an agent of the Washington Supreme Court. We find no support for that position. The fact that the court has delegated some of its exclusive authority in disciplinary matters, *see State ex rel. Schwab v. Washington State Bar Association,* 80 Wash.2d 266, 493 P.2d 1237, 1238–39 (S.Ct.1972), in such a way that some administrative actions are effectively final and unreviewable, is in our view further justification for the availability of federal court scrutiny when constitutional rights are implicated.

The important distinction between administrative and judicial actions in bar disciplinary matters was recognized in *Polk v. State Bar of Texas,* 480 F.2d 998 (5th Cir. 1973). Polk had sued in federal district court to enjoin publication in the state bar journal of a reprimand issued by a bar grievance committee. The district court dismissed the suit on the authority of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 748, 27 L.Ed.2d 669 (1971). The conclusion reached, similar to that reached by the district court in this case, was that federal courts should not interfere with state bar disciplinary proceedings. The Fifth Circuit reversed, emphasizing the distinction between administrative and judicial proceedings. The lack of any provision for state judicial review of the grievance committee decision was also noted. For those reasons, the court of appeals remanded for consideration of the first amendment claim. *See also Getty v. Reed,* 547 F.2d 971 (6th Cir. 1977). We reach a similar result.

Fully consistent with our holding is the influential report of the special committee established by the American Bar Associa-

tion to study disciplinary problems and procedures, commonly referred to as the Clark Committee. The committee concluded that when a state supreme court is vested with the ultimate disciplinary power, it should assure a means whereby it exercises that authority. ABA Special Committee on Evaluation of Disciplinary Enforcement, *Problems and Recommendations in Disciplinary Enforcement* 95 (Final Draft, June 1970) (the "Clark Report"). While emphasizing the need for "informal admonitory procedures" to dispose of minor matters, the report also stressed that because the ultimate disciplinary power lies with the court, the attorney should be entitled to insist as a matter of right upon formal disciplinary proceedings which would ensure ultimate judicial review. Clark Report at 91–96. The report is strong support for our conclusion that the deference accorded state court disciplinary proceedings in *MacKay* is wholly inappropriate when the federal plaintiff mounts a constitutional challenge to disciplinary sanctions imposed in state administrative proceedings from which he has no recourse as of right to a state court.

■ As an alternative basis for affirming the dismissal of Miller's suit, the State Bar contends that Mr. Miller cannot consider himself aggrieved by the letter. The State Bar acknowledges that the letter became a permanent part of Miller's record, and that it is intended to be a warning against similar conduct in the future; bar counsel also conceded at oral argument that Miller would be called upon to explain the presence of the admonition in his file in response to questions on applications for admission to the bars of other states, for judicial appointments, etc., relating to the disposition of any complaints filed against him.[3] The State Bar nevertheless asserts

---

2. The same considerations require rejection of the State Bar's argument that the Washington Supreme Court was an indispensable party. Miller does not challenge any action of that court.

3. For example, item 12 of the application for admission to the Bar of the United States Su-

preme Court requires disclosure and explanation of any disciplinary action taken against the applicant. Recent debate among the justices suggests that an applicant unable to explain any such disciplinary action to the satisfaction of the Court might conceivably be found want-

that the admonition is not "disciplinary action" because it does not revoke or suspend the appellant's right to practice law, and is not made public.

In asking us to treat a sanction less severe than public censure as though it were of no consequence whatever, the State Bar ignores the important role that non-public sanctions such as private reprimands and informal admonitions play in professional discipline. Indeed, in two of the more recent Supreme Court decisions involving attorneys' first amendment rights, the disciplinary actions under review were private, not public, reprimands. *In re R— M. J—,* —— U.S. ——, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982); *In re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978).

The State Bar also argues that the letter should not be considered a sanction because it is not a "finding of misconduct." It is, nevertheless, an expression of adverse opinion by the disciplinary arm of the State Bar and is aimed at deterring similar conduct in the future. The Clark Committee, discussed above, supported increased use of admonitory devices such as the one challenged here, but only under conditions which would assure the attorney's right to formal adversary proceedings and judicial

review if he so desired. Clark Report at 95. A more recent study characterizes administrative admonitions as lesser sanctions than disbarment, suspension, or public or private censure, but as sanctions nonetheless. Steele & Nimmer, *Lawyers, Clients, and Professional Regulation,* 1976 A.B.F.J. 917, 990. The study includes data on the increased use of informal admonitions, particularly in light of the recommendations of the Clark Report. *Id.,* Table 1 at 940.

The more recent Model Rules for Lawyer Disciplinary Enforcement [4] track the Clark Committee recommendations by providing that an admonition is a form of sanction to be imposed by bar counsel only "with the consent of the respondent." [5] Section 6.10 of the Standards for Lawyer Discipline and Disciplinary Proceedings [6] similarly provides that the attorney may reject the admonition and insist upon the institution of formal charges as a matter of right. All of these authorities recognize that an admonition, though the least severe disciplinary sanction, serves an important disciplinary purpose and should not be imposed unless the lawyer is willing to waive formal proceedings from which he has a right to judicial review.[7]

ing when measured against the "good moral and professional character" requirement of Supreme Court Rule 5.1. *See In re Admission of Benton,* 50 U.S.L.W. 3713 (March 8, 1982) (No. ——) (Burger, C. J., dissenting from admission of applicant); *In re Admission of Rose, id.* at 3714 (Stevens, J., concurring); *id.* (Burger, C. J., dissenting). In the latter case the Chief Justice was joined by Justice O'Connor.

4. The Model Rules were developed jointly by the Standing Committee on Professional Discipline and the National Center for Professional Responsibility of the ABA (October 1979). Not having been approved by that body's House of Delegates, the Model Rules are not the official position of the ABA.

5. Model Rules, *supra* n.4, at Rule 10(A)(6). *See also* Rule 8 of the Suggested Guidelines for Rules of Disciplinary Enforcement (3d ed. 1977), providing for disposition by bar counsel by informal admonition, subject to the right of the respondent to demand formal procedures.

6. The Standards appear in ABA National Center for Professional Responsibility for the Joint Committee on Professional Discipline, *Profes-*

*sional Discipline for Lawyers & Judges,* beginning at page 77 (Approved Draft, February 1979).

The reports discussed in detail in the text have recommended that state disciplinary procedures provide that a bar member dissatisfied with an admonition may appeal through the state court system. *See, e.g.,* Clark Report at 91–96. If Washington disciplinary procedures so provided, there would be no need for this action in order to assure judicial review.

7. Comparison of informal disciplinary sanctions and procedures in the other states comprising the jurisdiction of the Ninth Circuit is instructive. Four of those states have procedures that conform fairly closely to the model rules of the ABA. In Alaska, Arizona, Idaho and Oregon, the rules provide for a "private informal admonition" (in Arizona, called an "informal letter of reprimand"; in Oregon, simply called an "admonition"). In all four states, the attorney so admonished has the right to insist upon the institution of formal proceedings, which then go forward according to the rules of disciplinary procedure. *See* Alaska Bar Rules—Part II—Rules of Disciplinary En-

The letter of admonition sent to Mr. Miller stands as a permanent part of his record, for which he is professionally accountable. We are unable to agree that a person seeking review of such an admonition in federal court has no controversy with the admonishing authority. Since no review is available as of right in the state courts, we hold that such review is available in federal court for consideration of plaintiff's constitutional claim.

In reversing the district court's dismissal of this action, we of course express no opinion on the merits of appellant's contention that the poem in question was constitutionally protected speech and therefore immune from regulation by the State Bar.

Reversed and remanded for further proceedings.

ALARCON, Circuit Judge, specially concurring:

I concur in the result reached by the majority under compulsion of *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), overruled in part, *Monnell v. Department of Social Services*, 436 U.S. 658, 663, 98 S.Ct. 2018, 2021, 56 L.Ed.2d 611 (1978).

forcement, Rules 12(e) (providing for private informal admonition) *and* 14(f) (admonished attorney may demand that a formal proceeding be instituted against him); Arizona Supreme Court Rule 33(b)(1) (same); Rules of the Supreme Court and the Board of Commissioners of the Idaho State Bar, Rules of Disciplinary Enforcement and Withdrawal of Right to Practice Law, Rules 153(f) (providing for private informal admonition), 156(b)(3) (issuance of admonition by disciplinary counsel), and 157(a)(3) (right of admonished attorney to demand formal proceeding before hearing committee); *and* Oregon State Bar, Board of Governors Policy 8.250: Procedure for Processing Complaints Against Attorneys (if an admonition issued by the State Professional Responsibility Board is rejected by the attorney, the matter is referred to the Board of Governors, which can dismiss, admonish, or prosecute; if the lawyer rejects that admonition, formal proceedings automatically begin); *see also* Or.Rev. Stat. §§ 9.535, 9.490. The only divergence worthy of note is that under Alaska rules, if after formal hearing a private reprimand is imposed, the rules do not provide for review in the State Supreme Court. This appears by negative inference from Rule 15(j) of the Alaska Bar Rules, *supra*.

Two other states have rules which are similar in practical effect. California rules provide for a "private reproval," but full adversary procedures and judicial review are available. *See* Rules of Procedure of the State Bar of California, Rule 42 (providing for private reproval);

California Bus. & Profs.Code § 6082 (providing that "any person complained against" may have the action of the board reviewed by the supreme court). Nevada has no provision analogous to the private informal admonition. The only exception to a decision to either dismiss or prosecute a complaint is a narrowly available process for "informal resolution." *See* Nevada Supreme Court Rules 105(1), 104(1)(b), *and* 103(8).

The other two states in the Ninth Circuit have procedures closely analogous to those under consideration in this case. In Hawaii, an attorney is given an opportunity to respond before state bar counsel will issue a "private informal admonition," but no consent by respondent is required, and the rules do not provide for review of the admonition. *See* Hawaii Supreme Court Rule 16 (Disciplinary Rules), Rules 16.3(f) (providing for private informal admonition), 16.6(b)(3) (disposition by disciplinary counsel after opportunity to respond), *and* 16.7 (appearing to preclude review of issuance of admonition). The Montana rules also allow the issuance of an "admonition" if the Commission on Practice concurs with the Grievance Committee; the rule expressly states that there will be no further proceedings. *See* Montana Supreme Court, *In re Establishment of the Commission on Practice*, Rule IV(c), *reprinted in* 1979 Mont.Code Annot. 281, 283 (per curiam).